**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

FILED

03 DEC 19 AM 9:58

CLERK-ALBUQUERQUE

**MOISES SERVANTEZ,**

    Petitioner,

v.                                                 **CIVIL NO. 03-721 WJ/DJS**

**LANE BLAIR, Warden,**

    Respondent.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

1. THIS MATTER is a proceeding on a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. §2254. Petitioner seeks to vacate the judgment and sentence entered in No. CR 2000-262 in the Fifth Judicial District, Chaves County, of New Mexico. In that proceeding Petitioner was convicted following a jury trial of one count of Second Degree Murder, one count of Aggravated Battery, one count of Aggravated Assault and one count of Tampering with Evidence. In addition, the jury found that Petitioner used a firearm in the commission of the crimes of Second Degree Murder, Aggravated Battery, and Aggravated Assault. Subsequently, he was adjudged to be an habitual offender. As a result of the foregoing, Petitioner was sentenced to a term of imprisonment of twenty-eight years, to be followed by two years parole.

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

2. Petitioner challenges his conviction and sentence on several grounds. First, Petitioner asserts that he was denied his right to participate in jury selection and denied his right to testify on his own behalf. Second, Petitioner claims that he was afforded ineffective assistance of counsel. Third, Petitioner claims that he was deprived of a fair trial due to judicial misconduct. Petitioner's fourth claim for relief is that his right to equal protection was denied by his sentence, which was imposed pursuant to conviction for four crimes which arose out of a single transaction. As part of that same claim, Petitioner challenges the enhancements to his sentence for his use of a firearm and for his status as an habitual offender.

3. 28 U.S.C. §2254(b)(1) and (c) require that a state prisoner seeking relief must exhaust state remedies before seeking to obtain relief in a federal *habeas* proceeding. See generally, Rose v. Lundy, 455 U.S. 509 (1982). Respondent concedes that Petitioner has exhausted his state court remedies as to the claims brought in the instant petition. However, Respondent asserts that Petitioner's claims regarding the composition of his jury are subject to dismissal due to procedural default. In addition, Respondent filed a motion to dismiss the petition on the ground that it is time barred. The Court disagrees with the latter contention.

**TIMELINESS**

4. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), codified in part as 28 U.S.C. §2244(d)(1), became effective April 24, 1996 and established a one year statute of limitations for bringing *habeas* petitions pursuant to 28 U.S.C. §2254. That time period begins to run from the date on which the judgment became final by the conclusion of direct review or the expiration of time for direct review. 28 U.S.C. §2244(d)(1)(A). Alternatively, the time begins to run from the date on which the factual predicate of the claim presented could have been discovered

through the exercise of due diligence. 28 U.S.C. §2244(d)(1)(D). The one year statute of limitations is tolled during the time in which a properly filed application for state post-conviction or other collateral review is pending. 28 U.S.C. §2244(d)(2).

5. Petitioner's amended judgment and sentence was entered on March 12, 2001, after the effective date of the AEDPA. Answer, Exhibit B. Petitioner timely filed a notice of appeal to the New Mexico Court of Appeals, which denied his direct appeal on July 11, 2001. Answer, Exhibit G. Petitioner did not seek *certiorari* review from the New Mexico Supreme Court and his conviction became final for tolling purposes once his opportunity to seek *certiorari* review from the United States Supreme Court had passed. Rhine v. Boone, 182 F.3d 1153, 1155-56 (10th Cir. 1999) cert. denied, 528 U.S. 1084 (2000) (citing cases). Thus, ninety days after the denial of his direct appeal, Petitioner's conviction became final. On March 14, 2002, Petitioner filed a petition for writ of *habeas corpus* in state district court. Answer, Exhibit I. The petition was denied on that same day. Answer, Exhibit J. Petitioner's sought a writ of *certiorari* from the New Mexico Supreme Court regarding that denial, but his petition was denied on June 18, 2002. Answer, Exhibit O.

6. From the date Petitioner's conviction was final until the filing of his state *habeas* petition, one hundred and fifty-six days elapsed. Following the denial of the petition for writ of *certiorari* from the denial of Petitioner's first state *habeas* petition, Petitioner filed a motion to correct illegal sentence on September 5, 2002. Answer, Exhibit P. Between that filing and the denial of his petition for writ of *certiorari*, seventy-eight days elapsed, bringing the total elapsed time on Petitioner's *habeas* petition to two hundred and twenty-four days. See Barnett v. Lemaster, 167 F.3d 1321, 1322-23 (10th Cir.1999)(holding AEDPA period of limitations is tolled until state *habeas* relief is finally exhausted by denial of petition for writ of *certiorari*). After the filing of that motion, no

3

action was taken until after Petitioner filed a second motion to correct illegal sentence on January 22, 2003. Answer, Exhibit Q. An order denying a motion to correct illegal sentence was entered on February 27, 2003. Answer, Exhibit Q. The motion does not specify which motion was denied; however neither motion could be said to be pending following the state court's order, as both motions were premised largely upon an attack of the application of the state's Habitual Offender Act, an argument the state court specifically rejected. Answer, Exhibit Q. Following the denial of the motions to correct sentence, Petitioner filed his Federal *habeas* petition on June 16, 2003. Applying the "prison mailbox rule", Petitioner certified he mailed the petition on June 12, 2003, so the latter date applies for the purpose of the one-year AEDPA time limit.[2] From February 27, 2003 to June 12, 2003, one hundred and five days elapsed. In total, then, three hundred and twenty-nine days of the one-year AEDPA time period passed.

7. Respondent argues that the time during which Petitioner's motions to correct sentence should not toll the AEDPA time limit. However, he offers no authority for the proposition. Recently, in York v. Galetka, 314 F.3d 522, 526-27 (10th Cir. 2003), the Tenth Circuit Court of Appeals held that a motion to correct guilty plea brought after the direct review process should be considered part of the collateral review process for the purposes of the AEDPA timeliness calculation. While not exactly on point, the Circuit Court of Appeals' holding indicates that post-conviction motions other that state *habeas* petitions which challenge a conviction or sentence toll the AEDPA time limit.

**PROCEDURAL DEFAULT**

---

[2] Under the mailbox rule established in Houston v. Lack, 487 U.S. 266, 270, 275-76 (1988), a federal *habeas* petition is deemed filed as of the date the prisoner placed it in the prison's mail system.

4

8. Respondent contends that Petitioner failed to raise any claim regarding the selection or composition of the jury on direct appeal and thus procedurally defaulted claims regarding those issues, as such claims should not have waited until collateral proceedings. In addition, Respondent asserts that Petitioner raised claims of denial of the defense of self-defense, refusal to submit toxicology reports, and improper limitations on impeachment on direct appeal, but failed to seek *certiorari* review of the denial of those claims, thus procedurally defaulting portions of his claim regarding judicial bias and ineffective assistance of counsel.

9. Procedural default is a doctrine based in comity and federalism. Jackson v. Shanks, 143 F.3d 1313, 1317 (10th Cir. 1998) (citing Coleman v. Thompson, 501 U.S. 722, 730 (1991)).[3] Those claims which have been procedurally defaulted will be barred unless a *habeas* petitioner can show cause and prejudice for the default or that application of the rule would cause a miscarriage of justice. See Maes v. Thomas, 46 F.3d 979, 984 (10th Cir.) cert. denied, 502 U.S. 1110 (1995) (Federal courts do not address issues that have been defaulted in state court on an independent and adequate state ground unless cause and prejudice or a fundamental miscarriage of justice is shown).

10. Failure to timely seek *certiorari* review of the denial of a claim brought in New Mexico state court results in the procedural default of the claim. See Watson v. New Mexico, 45 F.3d 385, 387 (10th Cir. 1995) (Procedural default where *certiorari* review not sought from denial of state *habeas* petition); also see Maes v. Thomas, 46 F.2d 979 985-86 (10th Cir.) (Issues abandoned on direct appeal in New Mexico considered defaulted) cert. denied 514 U.S. 1115 (1995). However, the

---

[3] Procedural default occurs when a *habeas* petitioner fails to exhaust state remedies and the court to which he would be required to present his claims in order to meet the exhaustion requirement would find those claims procedurally barred. See Coleman, 501 U.S. at 735, n. 1.

New Mexico trial court did not rely on procedural default when considering Petitioner's state petition for *habeas corpus*. Answer, Exhibit J. Although New Mexico courts consistently apply their rule waiving issues not raised on direct appeal for the purposes of post-conviction relief, federal courts are not inclined to rely on state procedural rules which state courts do not rely on. Jackson v. Shanks, 143 F.3d 1313, 1318-19 (10th Cir.) cert. denied 525 U.S. 950 (1998). Given that fact, dismissing Petitioner's claims on the ground of procedural default is inappropriate in this case.

**MERITS**

11. In examining the merits of Petitioner's claims, the Court views the arguments in light of the standard set forth in 28 U.S.C. §2254(d), which provides that:

> An application for writ of *habeas corpus*...shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

This language means that if a state court ruled upon the merits of a *habeas* petitioner's claims, a federal court may grant his petition only if the petitioner can establish that the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law; decided the case differently than the Supreme Court has on a set of materially indistinguishable facts; or unreasonably applied the governing legal principle to the facts of the prisoner's case. Elliot v. Williams, 248 F.3d 1205, 1207 (10th Cir. 2001) (citing Williams v. Taylor, 529 U.S. 362 (2000)). When reviewing a state court's application of federal law, federal courts are precluded from issuing the writ simply because they conclude in their independent judgment that the state court applied the law erroneously

or incorrectly. Rather, the federal court must be convinced that the application was also objectively unreasonable. Id. In addition, a federal court "presume[s] the factual findings of the state court are correct unless petitioner can rebut this presumption by clear and convincing evidence." Smallwood v. Gibson, 191 F.3d 1257, 1265 (10th Cir. 1999) (citing § 2254(e)(1)).

12. Turning to the merits of Petitioner's first claim, that he was denied his right to participate in jury selection and denied his right to testify on his own behalf, the Court finds that Petitioner is not entitled to relief. Petitioner's claim was considered by the state court in the course of his *habeas* petition and was denied because "the claims asserted are without basis". Answer, Exhibit J, p. 2. Although the state court did not give the basis for its decision, it is clear that it considered the merits of the claims asserted in the state *habeas* petition. Further, Petitioner has not shown that the state court's decision was based upon an unreasonable determination of the facts when it concluded that the claims were without basis. Consequently, Petitioner is not entitled to relief under the standard set forth in §2254(d).

13. Petitioner's second claim for relief is that he was denied effective assistance of counsel. Petitioner asserts that his attorney failed to adequately investigate potential jurors, resulting in the seating of a biased jury, and that his attorney was ineffective for refusing to permit him to testify on his own behalf at trial. To succeed in his claims regarding ineffective assistance of counsel, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Judicial scrutiny of counsel's performance is highly deferential and indulges a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Rogers v. United States, 91 F.3d 1388, 1392 (10th Cir. 1996); Miles v.

Dorsey, 61 F.3d 1459, 1478 (10th Cir. 1995) (citations omitted). Under the prejudice aspect of Strickland as applied to trial counsel, a federal court inquires whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Rogers, 91 F.3d at 1392. Petitioner must establish that counsel's deficient performance rendered his trial fundamentally unfair or unreliable. Id..

14. As previously mentioned, Petitioner's claim that he was not permitted to testify on his own behalf at trial was found to be without basis by the New Mexico district court which reviewed his state *habeas* petition. Also, as discussed, *supra*, Petitioner has not met the burden established under 28 U.S.C. §2254(d)(2) for contesting the state court's factual conclusion. Because of that failure, he cannot succeed on his claim that his attorney provided ineffective counsel by preventing him from testifying at trial.

15. The other basis for Petitioner's claim of ineffective assistance of counsel is that his attorney failed to investigate possible jurors, resulting in the seating of a biased jury. Counsel may be ineffective for failing to attempt to remove from the jury an individual who has been established on *voir dire* to be biased. Hale v. Gibson, 227 F.3d 1298, 1319 (10th Cir. 2000). To show that a juror was biased, a *habeas* petitioner "must show more than that the juror had a preconceived notion of guilt; he must show that the juror had such a fixed opinion that he or she could not judge impartially." Id. at 1320. In this instance, Petitioner cannot show that his counsel is ineffective because he has failed to offer any evidence that the jury seated in his trail was biased, let alone that they suffered a preconceived notion of guilt. Petitioner asserts that two jurors, April Avitia and Lisa Wood had "close family ties" to the deceased victim. Petitioner contends that he repeatedly objected to the seating of Avitia and Wood as jurors, but was reprimanded by the trial judge and both were

8

selected to sit on the jury. Even given the alleged ties to a victim, Petitioner has failed to demonstrate bias or any preconceived notion of guilt by the jurors in question. Cf. Hale v. Gibson, 227 F.3d 1298, 1319-1320 (10th Cir. 2000) cert. denied 533 U.S. 957 (2001).

16. Petitioner also challenges his conviction on the ground that he was denied a fair trial by judicial misconduct. Petitioner contends that the trial judge showed bias by refusing to disqualify biased jurors and by failing to recuse himself based upon his personal knowledge that some of the jury pool was related to or had close family ties with the victims. In addition, Petitioner asserts that the trial court abused its discretion by suppressing evidence regarding his claim of self-defense. To succeed on his claim of judicial bias, Petitioner must demonstrate either that the trial judge was actually biased against him or that "circumstances were such that an appearance of bias created a conclusive presumption of actual bias." Fero v. Kerby, 39 F.3d 1462, 1478 (10th Cir. 1994). "[O]nly a strong, direct interest in the outcome of a case is sufficient to overcome that presumption of evenhandedness." Id. at 1479 (quoting Del Vecchio v. Illinois Dep't of Corrections, 31 F.3d 1363, 1373 (7th Cir.1994) (*en banc*). Petitioner fails to meet this burden. The trial judge's adverse rulings at trial may have provided grounds for appeal but they do not show bias. See Liteky v. United States, 510 U.S. 540, 551, 555 (1994).

17. Petitioner's fourth claim for relief is that his sentence was illegal and his right to equal protection was denied by that sentence, which was imposed pursuant to conviction for four crimes which arose out of a single transaction. In the facts listed in support of this contention, Petitioner states that he should not have been subjected to an habitual offender enhancement to his sentence based in part on a conviction which was more than ten years old at the time of sentencing. In addition Petitioner contends that it was improper for him to be subjected to an habitual offender

9

enhancement of his sentence as well as an enhancement for use of a firearm during the crimes. The New Mexico Court of Appeals denied Plaintiff's motion to add a double jeopardy claim based on these arguments to his direct appeal, concluding that the issue was without merit. Answer, Exhibit G.

18. Petitioner's claim that his habitual offender enhancement could not be imposed pursuant to a conviction which was over ten years old is baseless. Petitioner points to no federal Constitutional prohibition on the use of older convictions for the purpose of enhancing a current sentence and federal *habeas* relief will not lie for errors of state law. For that matter, Petitioner has not shown that the New Mexico Court of Appeals' resolution of his double jeopardy claim is contrary to clearly established federal law. Under federal law, the same or continuing transaction test is not the measure of double jeopardy under the law. Yparrea v. Dorsey, 64 F3d. 577, 579 (10th Cir. 1995). Similarly, relief cannot lie in the enhancement of Petitioner's sentence. The New Mexico firearm enhancement does not create a new class of crime, but creates additional consequences at sentencing, as does the New Mexico habitual offender enhancement. Cordova v. Romero, 614 F.2d 1267, 1269 (10th Cir.) cert. denied 449 U.S. 851 (1980); Yparrea, 64 F.3d at 579. Such enhancements do not normally raise double jeopardy issues. Yparrea, 64 F.3d at 579.

## RECOMMENDED DISPOSITION

That this petition be denied and this matter dismissed with prejudice.

DON J. SVET
**UNITED STATES MAGISTRATE JUDGE**